We'll move on to case number 25-8008, Wyo-Ben v. Burgum. Good morning, Your Honors. Robert Marsh on behalf of the appellants with me today at Council's table is my co-counsel, Mr. William Marsh. May it please the Court, this Court ruled in its prior opinion in this same case, and I quote, For placer claims like Wyo-Ben's, the relevant statute, 30 U.S.C. Section 35, requires the applicant to tender payment of the purchase price. And as if that weren't enough, the respondents admitted as much in oral argument in the district court, when Ms. Peters said, publication happens, and then final proofs are provided to the BLM office, along with a tender of the purchase price. It's undisputed in the record, Your Honors, that Wyo-Ben did exactly that on August 30 of 1993, when it delivered a check for the full purchase price for its claims to the BLM state office in Wyoming, exactly as this Court ruled was its statutory obligation under the statutes selected by Congress as defining the bounds of Wyo-Ben's entitlement to further processing, notwithstanding the patenting moratorium. But, Counsel, timing matters, doesn't it? I mean, just the tendering of payment alone, depending on where you are on the process, I mean, isn't that really the merits question before us? I mean, this sounds to me like you mailing in an application to a university and sending a check and saying, Well, I paid you, so you have to admit me now. Why isn't this different? It's different, Your Honor, because Congress has said so. What Congress selected as defining the applicant's entitlement to further processing is five specific statutes from the general mining law. What those statutes require is that the applicant tender payment of the purchase price, and the timing question Your Honor is addressing is really answered by when are the final proofs submitted. That is answered in the regulations and in the law that Congress selected, as well as once the final proofs are submitted and publication has ended without an adverse claim being submitted. Then the applicant has both the right under the regulations and the obligation under the statute to tender the purchase price. In that case, that's exactly what happened. Publication ended without an adverse claim while Ben tendered his final proofs as it was obligated to do and tendered the purchase price. At that moment, while Ben had done everything that it could do, and that was required by the statutes Congress selected as defining its entitlement to complete its application. It's also worth note, Your Honors, that the merits of Wildman's claim are really uncontested. In respondents brief on the merits in the district court, respondents have admitted that the 1997 review of Wildman's application, that is their current iteration of we've already done this. They have admitted that that review was not done on the basis of only Wildman's actions to comply with the general mining law. As this court has repeatedly ordered, is the standard. Can I get you to back up? I'm confused, honestly, as to why we are here. The last appeal, Judge Holmes and the panel repeated over and over and over again that the only reason your 30-year-plus claim was timely was because you were alleging agency in action and that that was what the panel decided was a repeated violation, not a continuing violation, but a repeated violation. It said it over and over and over again. This is an agency in action claim. Now, we go back and the district court said, what turns out, yes, the secretary did act, and they acted through BLM and they acted lawfully through BLM. We come back now on appeal, and you say we're not challenging. It's not even, it's moot whether the agency, whether, in your footnote 17, you say the delegation issue is moot, regardless of whether BLM or the secretary had authority to issue, because no one within the Department of the Secretary on down ever has the authority to disobey a congressional command. You have completely switched now, and we're no longer talking about inaction, as far as I can tell, which was the only basis for this case still being alive after all these years, is that the agency had failed to act. And now that's not even seeming to be where you're at anymore. So I disagree. In fact, you say it doesn't really matter. What doesn't matter? Whether the secretary acted. How does that not just end this case, as Neapolese essentially argue? You wouldn't be here if you weren't arguing agency inaction. It's for a couple of reasons, Your Honor. So number one is what is moot is whether the BLM was entitled to act. And it's moot precisely because. Well, you say in the footnote it doesn't matter who acted. It doesn't matter whether the secretary had authority or acted. What happened here? Because they haven't done what Congress ordered, and they have admitted it. So as I phrased it to the district court, you cannot say you've done. You're complaining now about what they did do, not about what they failed to do. No, Your Honor. We are saying they have failed to do what they were ordered by Congress and this court to do, which is to review Wyoben's application and determine its qualification by reference only to Wyoben's actions. It is undisputed they have never done that because in their own. That's a new theory, as far as I can tell. Previously, it was the secretary had never acted. And the secretary has still never acted, whether by delegation. And now you say that doesn't make any difference. What we are saying is it doesn't matter whether the secretary. And that's how you got here. That's the reason your claim was timely. And it has always been exactly as alleged in paragraph 25 of Wyoben's complaint. The gravamen of this case is neither the secretary nor any of the secretary's subordinates has ever done what Congress ordered, which was to review Wyoben's application based only on Wyoben's actions. What they did, which is not what Congress ordered, is to review it based on their own inaction. You're complaining about what they did. You're complaining about what they did, which is not inaction. And the court made that very clear, the distinction between inaction and action in the prior appeal. Respectfully, Your Honor, what we are complaining about is that they have never done what Congress instructed. They did something. You're saying they did something, but you don't think they did the right thing. That's different than saying they did nothing.  And getting here because it's timely because you said they never acted. It's undisputed that they have never done what Congress ordered, Your Honor. Well, counsel, there's Supreme Court case law that says in an APA 706-1 claim, which is what we have here, that if there is inaction, the court's remedy is just to say take action. You don't tell them how to do it, which is kind of what I hear you saying. They've never taken action as Congress directed. That would be this court saying you must do it, take some action and do it in this manner. Why wouldn't that remedy that you're seeking run afoul of Supreme Court precedent? Because there is no discretion left, Your Honor. Over 30 years, the respondents have never once identified anything in Weilben's application that was incomplete that would require them to redo any part of the process. As a consequence, they've either waived or forfeited those arguments before this court today. All that is left is the issue of whether Weilben appropriately tendered the purchase price. And as I said, it is undisputed that it did so in complete accordance with the law and the statutes that Congress selected as the dispositive issue. I feel like we're asking the same question maybe repeatedly, but do you dispute that they made a determination at all about Weilben's application? No. The point is that none of those determinations were bounded by the statute. I get it. You say they're unlawful. They didn't follow the statute. But you agree at least that by not including Weilben's application as an exception to the moratorium, and then I think it was in an instructional memorandum, that they at least made a decision on it, right? Yes. They did something, but they still have yet to do what Congress and the Tenth Circuit told them they had to do. And that's contrary to the argument you made to this Court in order to come within the statute of limitations. Respectfully, no, Your Honor. The argument has always been they didn't do what they were instructed to do. It has never been that they did nothing. It's that they have yet to do what they were required to do. Well, that's what this Court found is that there had been inaction, and that's how you got here. Yes. And if anything is – Are you saying we misunderstood your argument back then? No. Okay. If anything has changed, Your Honor, what changed is three years later and after this Court's prior determination in this case, the government disclosed some new documents. That's where the 1997 instruction memorandum came from. And it remains to this moment undisputed that that action, that that determination, that that review was based on the status of processing by the BLM. And this Court in the Mount Emin's case said the Secretary's action is contrary to the moratorium because the Secretary bases the applicant's eligibility for exemption on how far the Secretary has processed the application. While, quote, the moratorium clearly and unequivocally bases the applicant's eligibility only on the applicant's actions. And so as it was six years ago, as it remains today, the issue here is inaction. The respondents have never done what Congress has ordered them to do three dozen times. Counsel, let me ask a similar question in a slightly different way. In your petition, the relief you seek is an order requiring the defendants to review the application to determine whether it qualifies for the Section 404B exemption to the temporary moratorium. Have they not already done this? Not in accordance with the criteria for that determination that Congress instructed, Your Honor. They have never applied the criteria that Congress selected, which is Wyoben's actions, to comply with the statute. And with Your Honor's permission, I'll ask. And that is not a, that does not qualify, what you just said does not qualify as a 5 U.S.C. 7061 unlawfully withholding agency action. That is complaining about the action the agency took and the reasons it took it. It is not, it is not a 7061, which is what we've said the last time around. It needed to be in order to come within the statute of limitations. Respectfully, Your Honor, it is exactly what Mount Emmons said was a 7061 action subject to remedy under the APA. But with Your Honor's permission, I'll reserve my remaining time. Okay, thank you. Good morning. May it please the court. Counsel. My name is Jasmine Peters and I'm an assistant United States attorney in the District of Wyoming representing respondents, appellees in this action. The reason why Wyoben is not entitled to relief under APA section 7061 can be distilled down to three reasons. The first is that Wyoben no longer argues agency inaction. It argues action, which is under 7062. And that is the argument that is properly before the court. Aside from that, though, two other reasons exist. One is that BLM acted in 1993 on its patent application. Then again in 1994 and again in 1997. And then finally, the notion that there is an unconditional right to tender payment is one not properly before this court. But aside from that, is unsupported by the mining law of 1872, regulations and policy. While considering all of these points as we go through this this morning, context matters. What was happening in the patenting world in 1970 to 1994 before the moratorium came into effect sheds light on both Wyoben's actions and BLM's actions. There was no dispute that at this point in time when the moratorium was coming into effect that everyone, applicants and staff at BLM, understood that patenting was coming to an end. And the five-year plan, which is in the record, demonstrates that history for the court and does a good job at synthesizing what was going on. Now, Wyoben initially brought this case under a 706-1 claim. 706-1 is asserted when the agency failed to take a discrete agency action it is required to take. In the brief before the district court, it even acknowledged that the sole issue now before the court is whether the secretary must decide whether the application qualifies, referring to the exemption under the moratorium. Wyoben also initially argued that BLM lacked authority to act. But in Wyoben's opening brief to this court in footnote 7, it referred to those issues as moot. It also referred in footnote 1 of the reply as irrelevant and argued the same in the district court. But whether BLM had the authority to take action and whether it did take that action on Wyoben's 1993 application is precisely the issue that was before the court and that was previously argued. But as this court knows, a failure to act is not the same thing as a denial. Counsel, may I stop you one second? You just said a moment ago that Wyoben originally brought this action as a 706-1. I mean, isn't it still a 706-1 as we appear in court today? On its face, that is why we're here. However, when we're looking at the actual arguments, they are arguing agency action. Whether you call it 706-1 or not, we have to look to what is actually being argued. And it matters. But what about the fact that we're only here because the prior panel called it a 706-1 and said that's why, that's why it's not barred, time-wise. And we wouldn't be here if that hadn't happened. You're correct. In 2023, this court previously held that the statute of limitations argument that was raised under 2401, the six-year statute of limitations, did not apply specifically to a 706-1 argument because the repeated violations doctrine applied. That is different. The arguments have shifted since that time. So now what is happening is we're still under the premise of a 706-1 claim while Wyobin is arguing agency action, which is not properly before the court. Well, shouldn't that cause us to reconsider the statute of limitations issue? Yes. If the court understands that Wyobin's argument has morphed into a 706-2 claim, Well, that's what you're saying it has. that it is barred by the statute of limitations.  And how can we allow it to morph when we've already said, based on what they said it was, it's timely. But had they said it was what it is now, what it's morphed into, it would not have been timely. It seems like a runaround around our prior opinion. You know, you get in there and you find out, okay, we're okay, we can bring this, and then you change your approach. Or you keep your approach, but I don't know. I'm confused as to what we do with our prior opinion. That is the basis for saying this case was timely to begin with. So based on what Wyobin has argued and what it has argued since that opinion, when 706-1, that claim first came, Wyobin was arguing that the Secretary never acted. Right. And also argued that BLM never had the authority to act. But since then, it has waived that argument. It has changed course after the remand. So the remand order Well, you don't get to change course when you're only there. I thought that was your position in your response brief, is we should not even consider the merits of this, because you don't get to change course when that was the basis for finding the action was timely to begin with. Your Honor, you are correct. So I'm kind of confused as to why you're not asserting that today. I am asserting that. Okay. I am asserting that this case is only properly reviewed under a 706-1 claim. However, the district court did go into a 706-2 analysis, and because of that And why should we pay attention to that? Your Honor, I don't think you need to. I think this case can be properly resolved under 706-1. In fact, by Wyoben's own admissions, that BLM did act, and it did have authority. There is no dispute on that. But if the court wanted to look into the issues that were reviewed by the district court and argued by Wyoben The untimely claims The untimely claims That were barred by the statute of limitations. They are. But even if you wanted to look at them, the record in this case is quite clear that BLM acted. And it acted with proper delegated authority. And even if you considered a 706-2 claim, which is not properly before this court You can still find that it is in accordance with the law based on the regulations, the mining law, and policy. And so those are the arguments before this court. Primarily the 706-1 claim that is properly before this court should be the answer to this court's ability to affirm the judgment. Counsel, can I just make sure on the timeline that I understand when the morph occurred? So this case is before this court. The panel opinion, as we've been discussing, calls it a 706-1 action, discusses statute of limitations. And you said the morph happened when it went back on a remand before the district court. Was it there and before the district court that Wyoben then repackaged a 706-1 into a 706-2 argument? Because even as I look at the opening brief, they don't even mention 706-2, which I think you pointed out in your response brief. So did they sort of change horses mid race before the district court? Or did that not happen until the reply brief here maybe? When I review this case and I looked at Wyoben's arguments, it seems as though once IM 97-165 came to light in accordance with Wyoben's opinion, it came to light. That's when the arguments shifted to argue that IM is no longer in accordance with law. And so, therefore, there was no action, which is an argument we dispute. Those arguments did change from agency inaction to action without explicitly saying so. But as the record shows, IM 97-165 was an instructional memorandum that came into effect after Mount Emmons. This was not a memorandum that was hidden to Wyoben. Wyoben knew of this memorandum. It knew of the action that was being taken. And in fact, one of the applications that was allowed to proceed under Mount Emmons and that memorandum was Richard K. Brown, an affiliate of Wyoben. And so to claim that IM 97-165 was somehow just brought into the court at a later date is not correct. It's a public document. It was well known. Well, even if it was, you don't just morph into a new argument. That's correct. You do something, but you don't change your argument. And presumably, Wyoben understands this and is why it hasn't argued a 706-2 claim, because it is statutorily barred. There's no question about it. And so I think that is why we're here today, continuing to argue a 706-1 claim under interesting and convoluted arguments that have really hinged on agency action. And Mount Emmons is different than this case. Same with Vanderbilt. When we look at the cases that came before this one, those cases were different in many respects, specifically the factual differences, but more so in those cases, the applicants were not arguing that their application hadn't been decided whether or not it was subject to a moratorium. In Mount Emmons, the whole issue was whether the physical location of the application under IM-9501 was in accordance with the law, and that court did look at 706-2 and 706-1, at least from the order that has been published. That's what we see. But throughout the record, if this court wanted to dive into whether or not the BLM took action, it clearly did, and Wyoben does not argue to the contrary. And where you can see that most specifically is on August, I believe, 31st, 1993, there was a correspondence exchange between the parties. At that point in time, that's when Wyoben had attempted to submit payment, which, again, was premature. It wasn't asked for or called for by the BLM office. And that was a determination made in 1993, well before the moratorium came into effect. And so this notion that Wyoben had an unconditional right to tender payment is not supported by the regulations, the mining law of 1872, or policy. And we can see that most specifically when we look to the regulation on payment of the purchase price, 43 CFR 3862.4-6. In that regulation, it specifically says that the authorized officer referring to the appropriate BLM office will, if no other objection appears, so to determine whether an objection appears, you have to review it, will permit the applicant to pay. By its own language, it is clear that the authorized officer is the one to grant permission for payment. And so when we take all of this together, the court should affirm, the district court, on its determination that Wyoben failed to bring a 706-1 claim because the BLM did act on its application and acted with undisputed delegated authority. And aside from that, if the court has any other questions, the respondents' appellees respectfully request that it affirm the judgment in this case. Thank you. Thank you. Rebuttal? May it please the court, like most other issues in this case, the controlling decision here is this court's decision in Mount Emmons. In that case, the respondents had done exactly what they have now revealed to us they did to Wyoben. They accepted an application, they received the purchase money, and then they issued an instruction memorandum that says we don't have to process this any further. That is exactly what happened here. And the Mount Emmons court looked at those facts, which notably are not that the respondents had done nothing, but that what they had done is not what they were ordered to do because they had misapplied the criteria established by Congress. And on that basis, the Mount Emmons court found that the respondents had unlawfully withheld administrative action required by a clear and unequivocal act of Congress. That's exactly what has happened here, and it's exactly the same in action. A simple analogy. If Congress ordered the Department of the Interior to go paint a fence white, and the Department of the Interior went out and painted a garage red, they could not say that they had done what Congress ordered, and the failure to do that is the inaction under Section 706.1. I would also like to mention that Ms. Peter's argument about Wyoben had no right or obligation to tender this is contradicted by the respondents' own regulations at 43 Code of Federal Regulations 3862.6-1, which establishes that obligation. But my time is up, unless your honors have any other questions. All right. Thank you very much. Appreciate it. Thank you, your honors. Appreciate both your arguments, counsel. The case will be submitted, and counsel are excused.